IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 24-cv-01087-PAB-SBP

TYZHIMA BUTLER, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

SPECIALIZED LOAN SERVICING LLC,

    Defendant.

---

## ORDER

---

This matter comes before the Court on Defendant's Partial Motion to Dismiss and/or Strike Plaintiff's Complaint [Docket No. 19] pursuant to Fed. R. Civ. P. 12(b)(6) and 12(f).  On August 12, 2024, plaintiff filed a response.  Docket No. 25.  On August 30, 2024, defendant Specialized Loan Servicing LLC[1] ("SLS") filed a reply.  Docket No. 28.  The Court has jurisdiction pursuant to 28 U.S.C. § 1331.  Plaintiff seeks to represent a collection of "current and former call center agents or similar positions ('Agents'), who were compensated on an hourly basis."  Docket No. 1 at 1, ¶ 2.

---

[1] SLS states that plaintiff incorrectly identifies "Specialized Loan Servicing" as the defendant, rather than "NewRez LLC f/k/a Specialized Loan Servicing LLC."  Docket No. 19 at 1.  However, defendant does not deny that SLS is properly before the Court or explain why plaintiff has failed to correctly name it.  *Id*.

I.   **BACKGROUND**[2]

Plaintiff Tyzhima Butler brings this action on behalf of himself and behalf of the "FLSA Collective Class," comprised of "[a]ll current and former hourly call center agents who worked for Defendant at any time during the past three years" (collectively, "Agents").  *Id*. at 17, ¶ 99.  Plaintiff also purports to represent "[a]ll current and former hourly call center agents who worked for Defendant at any time in the State of Arizona during the applicable statutory period," pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) (the "Rule 23 Arizona Class").  *Id*. at 20, ¶ 115.  In addition, he purports to represent a "Rule 23 Nationwide Class" comprised of "[a]ll current and former hourly call center agents who worked for Defendant at any time during the applicable statutory period."  *Id*. at 22, ¶ 124.

SLS employs hundreds of Agents who work remotely in their homes to "field[] inbound calls and perform[] a wide range of support services to those callers with questions" and to "provid[e] customer, sales, and mortgage information."  *Id*. at 6–7, ¶¶ 30, 35.  SLS compensates Agents on an hourly basis and classifies them as "non-exempt" employees under the Fair Labor Standards Act (the "FLSA").  *Id*. at 6, ¶ 32.  SLS requires Agents to work a minimum of eight hours per day, with an unpaid thirty-minute meal period, five days per week, for a minimum of forty hours per week.  *Id*. at 6–7, ¶ 34.  However, during some weeks, Agents work less than forty hours per week.  *Id*.

---

[2] The facts below are taken from plaintiff's complaint, Docket No. 1, and are presumed to be true, unless otherwise noted, for purposes of ruling on SLS's motion to dismiss.

2

SLS requires that Agents be "phone-ready" the moment their scheduled shift begins.  *Id*. at 7, ¶ 37.  This means that, before Agents' scheduled shift begins, Agents must "load[] all of their essential work-related computer programs and applications . . . so they can be prepared to take calls the moment their shift begins."  *Id*.  This process can take fifteen to twenty minutes.  *Id.* at 10, ¶ 53.  If Agents fail to be "phone-ready," SLS can subject them to "poor performance evaluations, warnings, discipline, and possibly termination."  *Id*. at 2, ¶ 5.  SLS instructs Agents to not "clock in" for their shifts until they are "phone-ready" or until they are nearly "phone-ready."  *Id*. at 8, ¶ 39.  SLS requires that Agents follow the same procedure when they are clocking in and out of their lunch breaks.  *Id*., ¶ 40.  As a result, Agents return from their thirty-minute meal period approximately three to five minutes early to "log back in to Defendant's programs and software prior to resuming their shifts."  *Id*. at 11, ¶ 64.

Due to Agents performing "pre- and mid-shift work off-the-clock," SLS's timekeeping systems do not accurately represent the time that Agents worked.  *Id*. at 8, ¶ 44.  SLS fails to pay Agents for their "off-the-clock" work due to Agents being unpaid for the time that they spend "in connection with the pre- and mid-shift boot-up, login, and log-out processes."  *Id*. at 8–9, ¶ 45.  Therefore, "Plaintiff and similarly situated Agents regularly worked overtime and non-overtime hours for which they were not paid."  *Id*. at 9, ¶ 46.  When Agents do not work over forty hours in a week, Agents are deprived of "straight-time wages."  *Id*., ¶ 47.

SLS's payment structure includes a "base rate of pay" as well as "various routine and non-discretionary bonuses."  *Id*. at 14, ¶ 83.  Non-discretionary bonuses include "attendance bonuses, quality assurance bonuses, and other incentive-based bonus

3

payments." *Id*. SLS does not include the non-discretionary bonuses into Agents' "regular rate of pay and resulting overtime rate premium." *Id*. at 15, ¶ 85. As a result, SLS "did not pay the proper overtime rate under the FLSA." *Id*.

Plaintiff brings claims under (1) the FLSA, 29 U.S.C. § 201, et. seq., (2) the Arizona Wage Act (the "AWA"), Ariz. Rev. Stat. §§ 23-350, et. seq., on behalf of the Arizona class [3]; (3) state common law breach of contract regarding the Nationwide Class; and (4) common law unjust enrichment, pled in the alternative as to claim three, on behalf of the Nationwide Class. *Id*. at 24–30, ¶¶ 133–179.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible." *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)). Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting

---

[3] The complaint states that claim two is brought on behalf of the "Rule 23 Colorado Class," however, the allegations of claim two only reference the "Arizona Class." Docket No. 1 at 27, ¶¶ 151–161. Moreover, the remainder of the complaint does not reference the "Rule 23 Colorado Class." *See generally* Docket No. 1. Therefore, the Court assumes that claim two is being brought on behalf of the Arizona Class.

4

*Twombly*, 550 U.S. at 555) (alterations omitted).  A court, however, does not need to accept conclusory allegations.  *See, e.g.*, *Hackford v. Babbit*, 14 F.3d 1457, 1465 (10th Cir. 1994) ("[W]e are not bound by conclusory allegations, unwarranted inferences, or legal conclusions.").

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)).  If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim.  *Khalik*, 671 F.3d at 1191 (quotations omitted).  Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  *Bryson*, 534 F.3d at 1286 (alterations omitted).

### III.  ANALYSIS

SLS argues that claim two, brought under the AWA, should be dismissed because the "FLSA preempts Plaintiff's attempt to recover unpaid overtime wages under the AWA."  Docket No. 19 at 3–4.  SLS states that the AWA only entitles "employees to receive wages due on their regular paydays," rather than providing an entitlement to overtime wages.  *Id*. at 4.  Therefore, SLS argues that plaintiff must bring his claim for unpaid overtime wages under the FLSA.  *Id*.  Plaintiff responds that the

FLSA does not preempt the AWA because states are permitted to establish more stringent requirements, without the FLSA having a preemptive effect. Docket No. 25 at 3–7. Plaintiff also argues that he has pled plausible claims under the AWA that are independent of the FLSA. *Id*. at 8–9.

"Conflict preemption occurs either when compliance with both the federal and state laws is a physical impossibility, or when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Keith v. Rizzuto*, 212 F.3d 1190, 1193 (10th Cir. 2000) (internal quotation and citation omitted). "Whether the FLSA preempts more-generous state remedies is a matter of some debate, with the Fourth Circuit and the Ninth Circuit apparently representing the opposing views." *Hernandez v. Ray Domenico Farms, Inc.*, 250 F. Supp. 3d 789, 793 (D. Colo. 2017). In this district, the FLSA does not preempt Colorado state wage claims and, as such, plaintiffs can "assert claims for relief under both statutes*.*" *Esquibel v. Hendler*, No. 16-cv-00682-CMA-STV, 2017 WL 5990098, at *3 (D. Colo. July 24, 2017) (quoting *Redmond v. Chains, Inc.*, 996 P.2d 759, 764 (Colo. App. 2000)).

Courts in the District of Arizona have held that "the AWA does not require overtime payment by private employers." *Salgado v. Flowers Foods Inc.*, 2023 WL 5348573, at *2 (D. Ariz. Aug. 21, 2023). However, while the FLSA confers a "substantive right to overtime pay," "the AWA goes beyond the FLSA by requiring Defendant to pay those overtime wages in a timely manner and authorizing treble damages." *Lewis v. MHM Health Pros., LLC*, 696 F. Supp. 3d 707, 723 (E.D. Mo. 2023). In other words, the "AWA does not require payment of overtime, but it does

6

require that, when due, overtime pay be paid not later than sixteen days after the end of the most recent pay period." *Salgado*, 2023 WL 5348573, at *2.

In claim two, plaintiff alleges that "Defendant promised to pay and was required to pay Plaintiff and the Rule 23 Arizona Class Members overtime wages at the rate of one and one-half their regular rate of pay for all hours over 40 hours in the workweek." Docket No. 1 at 28, ¶ 157. Furthermore, plaintiff alleges that Agents typically worked more than forty hours per week and that SLS "deprived" Agents of overtime pay by failing to compensate agents for "off-the-clock pre- and mid-shift activities they performed." *Id.* at 13, ¶ 78. Section 23-351 of the Arizona Revised Statutes states that "[e]ach employer, on each of the regular paydays, shall pay to the employees all wages due [to] the employees up to that date, except: . . . [o]vertime or exception pay shall be paid not later than sixteen days after the end of the most recent pay period." Ariz. Rev. Stat. § 23-351(C)(3). Under the AWA, "wages" are defined as "nondiscretionary compensation due [to] an employee in return for labor or services rendered by an employee for which the employee has a reasonable expectation to be paid whether determined by a time, task, piece, commission or other method of calculation." Ariz. Rev. Stat. § 23-350(7).

The Court finds that plaintiff sufficiently alleges that Agents had a reasonable expectation they would be compensated for overtime work and that they did not receive such compensation. Therefore, overtime wages constitute "wages" that SLS had the obligation to pay Agents in a timely manner pursuant to Ariz. Rev. Stat. § 23-351(C). Because plaintiff alleges that overtime wages are "wages" under Ariz. Rev. Stat. § 23-350(7), the AWA required SLS to pay overtime wages to Agents "not later than sixteen

7

days after the end of the most recent pay period." Ariz. Rev. Stat. § 23-351(C)(3). Therefore, the Court finds that plaintiff sufficiently alleges that SLS violated the AWA by failing to timely pay overtime wages pursuant to Ariz. Rev. Stat § 23-351(C)(3).

The Court rejects SLS's argument that it is impossible to comply with both the FLSA and AWA or that the AWA stands as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress in enacting the FLSA. Docket No. 19 at 3–4. The FLSA entitles employees to overtime compensation "at a rate not less than one and one-half times the regular rate" when an employee works more than forty hours per week. 29 U.S.C. § 207(a)(1). The AWA does not grant a free-standing entitlement to overtime wages, but rather requires an employer to pay overtime wages when an employee has a *reasonable expectation* of such compensation. See Ariz. Rev. Stat. §§ 23-350(7), 23-351(C)(3); *see also Salgado*, 2023 WL 5348573, at *2. Furthermore, the AWA requires that, when an employee has such a reasonable expectation, the employer must pay overtime wages in a timely manner. See Ariz. Rev. Stat. § 23-351(C)(3). The FLSA and AWA provide different forms of relief, and SLS fails to explain why it is impossible to comply with the FLSA and AWA. Therefore, the AWA does not stand as an obstacle to the accomplishment and execution of the full purposes and objectives of the FLSA. *See Keith*, 212 F.3d at 1193; *Lewis*, 969 F. Supp. 3d at 723 ("The AWA does not interfere with the FLSA's protections, it augments them.").[4] Accordingly, the Court will deny SLS's motion to dismiss.

---

[4] To the extent that SLS only challenges those allegations under plaintiff's second claim that reference Agents' entitlement to unpaid overtime compensation, SLS does not seek to strike such allegations. Rather, SLS seeks to dismiss or strike the entirety of plaintiff's second claim on the basis that the AWA claim is preempted by the FLSA. Docket No. 19 at 4. Because plaintiff's second claim is premised on SLS's

IV. **CONCLUSION**

Therefore, it is

**ORDERED** that Defendant's Partial Motion to Dismiss and/or Strike Plaintiff's Complaint [Docket No. 19] is **DENIED.**

DATED February 4, 2025

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

---

failure to timely pay promised overtime wages, the Court denies SLS's motion to dismiss or strike the entirety of plaintiff's claim under the AWA.