IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 24-cv-01087-PAB-SBP

TYZHIMA BUTLER, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

SPECIALIZED LOAN SERVICING LLC,

    Defendant.

**ORDER**

This matter comes before the Court on Defendant's Motion to Strike Class Allegations and Deny Class Certification [Docket No. 49]. Plaintiff Tyzhima Bulter[1] filed a response, Docket No. 52, and defendant Specialized Loan Servicing LLC ("SLS") filed a reply. Docket No. 53. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

**I.  BACKGROUND**

Plaintiff brings claims under (1) the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et. seq., (2) the Arizona Wage Act (the "AWA"), Ariz. Rev. Stat. §§ 23-350, et seq., on behalf of the Arizona Class [2]; (3) state common law breach of contract

---

[1] Plaintiff's gender is unclear. The complaint primarily refers to plaintiff as male, *see, e.g.*, Docket No. 1 at 21-22, 31, ¶¶ 118, 119, 121, but refers to plaintiff as female at times. *See e.g., id.* at 17, 23, ¶¶ 97, 127. In briefing on the instant motion, plaintiff refers to plaintiff as both male and female, but primarily refers to plaintiff as female. *See, e.g.*, Docket No. 52 at 10, 13. The Court will assume that plaintiff is female based on plaintiff's representations in response to the instant motion to strike and in the proposed notice. *See* Docket No.33-2 at 1.

[2] The complaint states that claim two is brought on behalf of the "Rule 23 Colorado Class;" however, the allegations of claim two reference only the "Arizona

regarding the Nationwide Class; and (4) common law unjust enrichment, pled in the alternative as to claim three, on behalf of the Nationwide Class. Docket No. 1 at 24–30, ¶¶ 133–179.

Plaintiff brings this action on behalf of herself and behalf of the "FLSA Collective Class," comprised of "[a]ll current and former hourly call center agents who worked for Defendant at any time during the past three years" (collectively, "Agents"). *Id*. at 17, ¶ 99. Plaintiff also purports to represent "[a]ll current and former hourly call center agents who worked for Defendant at any time in the State of Arizona during the applicable statutory period," pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) (the "Rule 23 Arizona Class"). *Id*. at 20, ¶ 115. In addition, she purports to represent a "Rule 23 Nationwide Class" comprised of "[a]ll current and former hourly call center agents who worked for Defendant at any time during the applicable statutory period." *Id*. at 22, ¶ 124.

SLS employs hundreds of Agents who work remotely in their homes to "field[] inbound calls and perform[] a wide range of support services to those callers with questions" and to "provid[e] customer, sales, and mortgage information." *Id*. at 6–7, ¶¶ 30, 35. SLS compensates Agents on an hourly basis and classifies them as "non-exempt" employees under the Fair Labor Standards Act (the "FLSA"). *Id*. at 6, ¶ 32. SLS requires Agents to work a minimum of eight hours per day, with an unpaid thirty-minute meal period, five days per week, for a minimum of forty hours per week. *Id*. at

---

Class." Docket No. 1 at 27, ¶¶ 151–161. Moreover, the remainder of the complaint does not reference the "Rule 23 Colorado Class." *See generally* Docket No. 1. Therefore, the Court assumes that claim two is being brought on behalf of the Arizona Class.

6–7, ¶ 34.  However, during some weeks, Agents work less than forty hours per week.  *Id.*

SLS requires that Agents be "phone-ready" the moment their scheduled shift begins.  *Id*. at 7, ¶ 37.  This means that, before Agents' scheduled shift begins, Agents must "load[] all of their essential work-related computer programs and applications . . . so they can be prepared to take calls the moment their shift begins."  *Id*.  This process can take fifteen to twenty minutes.  *Id.* at 10, ¶ 53.  If Agents fail to be "phone-ready," SLS can subject them to "poor performance evaluations, warnings, discipline, and possibly termination."  *Id*. at 2, ¶ 5.  SLS instructs Agents to not "clock in" for their shifts until they are "phone-ready" or until they are nearly "phone-ready."  *Id*. at 8, ¶ 39.  SLS requires that Agents follow the same procedure when they are clocking in and out of their lunch breaks.  *Id*., ¶ 40.  As a result, Agents return from their thirty-minute meal period approximately three to five minutes early to "log back in to Defendant's programs and software prior to resuming their shifts."  *Id*. at 11, ¶ 64.

Due to Agents performing "pre- and mid-shift work off-the-clock," SLS's timekeeping systems do not accurately represent the time that Agents worked.  *Id*. at 8, ¶ 44.  SLS fails to pay Agents for their "off-the-clock" work due to Agents being unpaid for the time that they spend "in connection with the pre- and mid-shift boot-up, login, and log-out processes."  *Id*. at 8–9, ¶ 45.  Therefore, "[p]laintiff and similarly situated Agents regularly worked overtime and non-overtime hours for which they were not paid."  *Id*. at 9, ¶ 46.  When Agents do not work over forty hours in a week, Agents are deprived of "straight-time wages."  *Id*., ¶ 47.

3

SLS's payment structure includes a "base rate of pay" as well as "various routine and non-discretionary bonuses." *Id*. at 14, ¶ 83. Non-discretionary bonuses include "attendance bonuses, quality assurance bonuses, and other incentive-based bonus payments." *Id*. SLS does not include the non-discretionary bonuses in Agents' "regular rate of pay and resulting overtime rate premium." *Id*. at 15, ¶ 85. As a result, SLS "did not pay the proper overtime rate under the FLSA." *Id*.

## II.  ANALYSIS

The Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). However, "a motion to strike is a drastic remedy . . . and is disfavored by the courts." *Francis v. Mead Johnson & Co.*, No. 10-cv-00701-JLK, 2010 WL 3733023, at *1 (D. Colo. Sept. 16, 2010) (internal quotation and citation omitted). "A motion to strike class allegations under Rule 12(f) is even more disfavored because it requires a reviewing court to preemptively terminate the class aspects of litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification." *Id.* (internal quotation, alteration, and citation omitted). In order to succeed on a motion to strike class allegations, the defendant has the burden to show that, based on the face of plaintiff's complaint, it will be "*impossible* to certify the classes alleged by the plaintiffs regardless of the facts the plaintiffs may be able to prove." *Id.* (citation omitted); *see also Ramsay v. Frontier, Inc.*, No. 19-cv-03544-CMA-NRN, 2020 WL 4557545, at *24 (D. Colo. July 30, 2020), *report and recommendation adopted*, 2021 WL 651021 (D.

4

Colo. Feb. 19, 2021) (holding that defendant has the burden to "show conclusively that plaintiffs will be unable to establish facts that would make class treatment appropriate");

SLS moves to strike the class action allegations in plaintiff's complaint for the following reasons: (1) the Nationwide Class and Arizona Class are not ascertainable pursuant to Fed. R. Civ. P. 23(a); (2) common questions of law and fact do not predominate and the class action is not superior to other methods of adjudication pursuant to Rule 23(b)(3); (3) plaintiff does not have standing to bring claims on behalf of the Nationwide Class because she can only bring claims under Arizona law; and (4) plaintiff cannot maintain a Rule 23(b)(2) class because she seeks declaratory relief that SLS's actions were unlawful and plaintiff cannot seek monetary damages. Docket No. 49 at 6-14.

Plaintiff responds that SLS's motion to strike is premature and that its arguments should be resolved at the class certification stage. Docket No. 52 at 2-4. Specifically, she argues that questions of predominance and superiority under Rule 23(b)(3) should be considered after discovery and briefing on the issue has concluded. *Id.* at 7-10. While SLS characterizes the issue of whether plaintiff can bring claims on behalf of the Nationwide Class as an issue of standing, plaintiff argues that the issue concerns predominance and should be addressed at the class certification stage. *Id.* at 10-13. Plaintiff also argues that it is premature to determine whether a class should be certified under Rule 23(b)(2). *Id.* at 13-14. At this "early stage" of proceedings, plaintiff argues that her proposed classes are sufficiently ascertainable. *Id.* at 4-7.

A. <u>Ascertainably</u>

The Court first addresses SLS's argument that the Nationwide Class and Arizona class are not ascertainable. *See* Docket No. 49 at 7-10. "Although not specifically mentioned in the rule, an essential prerequisite to an action under Rule 23 is that there must be a class." *Edwards v. Zenimax Media Inc.*, No. 12-cv-00411-WYD-KLM, 2012 WL 4378219, at *4 (D. Colo. Sept. 25, 2012) (citation omitted); *see also Carrera v. Bayer Corp.*, 727 F.3d 300, 306 (3d Cir. 2013) (noting that "[c]lass ascertainability is an essential prerequisite of a class action, at least with respect to actions under Rule 23(b)(3)" (internal quotations and citation omitted)). "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Donaca v. Dish Network, LLC*, 303 F.R.D. 390, 397 (D. Colo. 2014). If the class members are identifiable using a defendant's records, then the class is ascertainable. *Wornicki v. Brokerpriceopinion.com, Inc.*, No. 13-cv-03258-PAB-KMT, 2016 WL 11697044, at *8 (D. Colo. Sept. 20, 2016).

Plaintiff defines the Nationwide Class as follows: "All current and former hourly call center agents who worked for Defendant at any time ruing the applicable statutory period." Docket No. 1 at 22, ¶ 124. Plaintiff defines the Arizona Class as: "All current and former hourly call center agents who worked for Defendant at any time in the State of Arizona during the applicable time period." *Id*. at 20, ¶ 115.

SLS has not conclusively shown that plaintiff "will be unable to establish facts that would make class treatment appropriate." *Ramsay*, 2020 WL 4557545, at *24 (citation omitted). Specifically, SLS has not shown that it is impossible that the Nationwide and Arizona Classes are ascertainable. SLS contends that plaintiff's

6

"amorphous, all-encompassing job category of 'call center agents' who 'assist customers'" fails to identify any "concrete job position, primary duty, incentive plan, timekeeping system, or anything else that could help the Court determine membership." Docket No. 49 at 8.  However, plaintiff does identify objective criteria by which members of the class can be ascertained.  For instance, plaintiff alleges that all call center agents: (1) are paid on an hourly basis; (2) classified as non-exempt employees; (3) use the same timekeeping system; (4) use the same computer programs; (5) are subject to the timekeeping and attendance polices that resulted in not being paid overtime compensation; and (6) have the primary job duty of providing assistance to SLS's customers, which included "fielding inbound calls and performing a wide range of support services to those callers with questions."  Docket No. 1 at 1-2, 7, ¶¶ 3, 35.  Plaintiff alleges that each call center agent received training that forced them to "perform the boot-up and login process before clocking in to Defendant's timekeeping system."  *Id.* at 7, ¶ 37.  Furthermore, plaintiff alleges that each call center agent did not receive the proper overtime rate because SLS did not account for call center agents' non-discretionary payments when determining call center agents' regular rate of pay.  *Id.* at 15, ¶ 85.  Plaintiff alleges that the identity of call center agents who did not receive overtime pay are in the possession of SLS because it has a record of "the times Plaintiff and all other Agents boot up and login into their computers each day, along with the time they log into their telephone systems."  *Id.* at 8, ¶ 43.  More generally, plaintiff alleges that SLS possesses "payroll and timekeeping records that will illustrate exactly which weeks Plaintiff worked over forty (40) hours and exactly which weeks they worked under forty (40) hours."  *Id.* at 13-14, ¶ 79.  Where "all the parameters for membership in

7

th[e] class are objective criteria, and defendants' business records should be sufficient to determine the class membership status of any given individual," a class is ascertainable.  See *Pryor v. Aerotek Sci., LLC*, 278 F.R.D. 516, 523, 537 (C.D. Cal. 2011) (citation omitted) (finding that a class consisting of all "all employees of Aerotek Scientific, LLC [('Aerotek')] who were assigned to a UnitedHealth Group [("UHG")] Prescription Solutions call center in California at any time from August 2, 2006 through the present," who brought claims alleging that they performed pre-shift work without compensation, was sufficiently ascertainable because "[m]embership in the class is not ambiguous or speculative") (citations and alteration omitted).

The fact that putative class members have different job titles does not mean that it is impossible to ascertain the class.  Plaintiff identifies objective criteria by which to ascertain the class, and discovery would permit the parties to identify the job titles SLS uses in referring to call center agents.  Cf. *Nitsch v. Dreamworks Animation SKG Inc.*, 315 F.R.D. 270, 286 (N.D. Cal. 2016) (finding that the class was ascertainable because the proposed class definition "explicitly incorporates [expert's] list of job titles and specifies for each Defendant which years are included in the class period").  SLS's reliance on *Faulhaber v. Petzl Am., Inc.*, 656 F. Supp. 3d 1257, 1273 (D. Colo. 2023), for the proposition that plaintiff's proposed classes are not ascertainable because they "necessary include individuals who have suffered no injury" is unavailing.  Docket No. 49 at 9.  In *Faulhaber*, the court found that a proposed class of all persons who purchased the allegedly defective device was not ascertainable because the class included individuals who purchased the product but did not experience the defect.  656 F. Supp. 3d at 1273.  Plaintiff did not allege that every person who purchased the

8

device experienced the defect.  Here, however, plaintiff alleges that every call center agent used the same timekeeping technology and was subject to the same non-discretionary payment system that caused the injuries at issue due to SLS's widespread policies and practices.  Docket No. 1 at 1-2, 15, ¶¶ 3, 85.

The Court further finds that the issue of whether the class is ascertainable is better resolved on a motion for class certification, where it will have the benefit of discovery.  See *Francis*, 2010 WL 3733023, at *2 (finding that it was "neither appropriate nor necessary to address" a motion to strike class allegations that, in part, challenged the ascertainability of the proposed class); *Carranza v. Terminix Int'l Co. Ltd. P'ship*, 529 F. Supp. 3d 1139, 1144 (S.D. Cal. 2021) (finding that while defendant "raises salient points regarding Plaintiff's proposed class," including challenges to ascertainability, defendant did not show "that the proposed classes are not certifiable as a matter of law" and that "these issues are better resolved on a motion for class certification with the benefit of discovery").

Therefore, SLS has not shown that plaintiff's allegations in support of the class definitions are so overbroad that it would be impossible for plaintiff to certify the class.

### B. Predominance and Superiority

The Court turns to SLS's argument that plaintiff's proposed classes do not satisfy the predominance and superiority requirements of Rule 23(b)(3) due the application of multiple states' laws to putative class members' claims.  See Docket No. 49 at 10-13.  In order to certify a class under Rule 23(b)(3), the Court must find that "the questions of law or fact common to class members predominate over any questions affecting only

9

individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

As an initial matter, it is not clear which states' laws would apply to the Nationwide Class claims, and the complaint does not identify which states' laws the claims are brought under.  See Docket No. 1 at 22-24, 28-31.  The parties do not discuss choice-of-law as it relates to the Nationwide Class claims; thus, the Court cannot determine, in this nationwide class action, whether "variations in state law may swamp any common issues and defeat predominance."  *Goode v. Nuance Commc'ns, Inc.*, 2020 WL 4606848, at *4 (N.D. Okla. May 7, 2020) (quoting *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996)); *see also Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 140 (2d Cir. 2015) ("Because the purported class members reside in twenty-seven different states, the district court properly recognized that, as an initial matter, a choice-of-law analysis was necessary to its determination whether common or individual issues would predominate in the litigation.").  Therefore, the Court finds it appropriate to analyze predominance and superiority at the class certification stage, where plaintiff will be required to "provide an extensive analysis of state law variations to reveal whether these pose insuperable obstacles."  *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 724 (5th Cir. 2007) (internal quotations and citation omitted); *see also Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc.*, 601 F.3d 1159, 1180 (11th Cir. 2010) ("Undeniably, it falls to the plaintiff to demonstrate the homogeneity of different states' laws, or at least to show that any variation they contain is manageable."); *Langan v. Johnson & Johnson Consumer Co., Inc.,* 897 F.3d 88, 97 (2d Cir. 2018) ("district courts must do more than take the plaintiff's word that no material

differences exist . . . [r]ather, district courts themselves must undertake a considered analysis of the differences in state laws").

Even if the Nationwide Class claims did arise under the laws of several states, SLS fails to show that it is impossible that the proposed classes satisfy predominance and superiority requirements. SLS argues that the Nationwide Class allegations must be struck because "Plaintiff cannot establish common questions predominate over individual questions" as the breach of contract and unjust enrichment claims will "materially vary from state-to-state." Docket No. 49 at 10. While SLS argues that plaintiff "has the burden of showing that the variations in these states' laws are manageable," SLS cites no authority for the proposition that a plaintiff must demonstrate the manageability of litigating claims under different states' laws before she moves for class certification. *Id*. While differences in state laws can defeat predominance and superiority of a nationwide class, *see, e.g.*, *In re HomeAdvisor, Inc. Litig.*, 345 F.R.D. 208, 230-237 (D. Colo. 2024), the Court finds it is not impossible for plaintiff to show the Nationwide Class is manageable despite variations in state laws. *See Francis,* 2010 WL 3733023, at *1*; see also Knopke v. Ford Motor Co.,* 2014 WL 5817326, at *9 (D. Kan. Nov. 10, 2014) ("While the Court is mindful of the challenges posed by the nationwide class claims in Count V of Plaintiff's Complaint, it finds that the better course is to allow discovery to proceed on issues of class certification and to consider these issues in the context of a motion to certify the class" rather than granting defendant's motion to strike); *Khorrami v. Lexmark Int'l Inc*, 2007 WL 8031909, at *3 (C.D. Cal. Sept. 13, 2007) (denying motion to strike nationwide class allegations where defendant's argument "stems entirely from the concern that a nationwide class action relying upon

11

state law is inherently unmanageable, and therefore fundamentally unfit to be certified" while acknowledging that "[s]uch an objection is not without merit," but at the pleading stage plaintiff had "not yet had the opportunity to explain how she proposes to maintain a manageable action because she has not yet moved for class certification"); *Goetz v. Ainsworth Pet Nutrition, LLC*, 768 F. Supp. 3d 645, 660 (S.D.N.Y. 2025) (rejecting defendant's argument that "it would be nearly impossible and patently unmanageable to adjudicate the express warranty claims of the nationwide class because the court would be forced to apply the laws of all 50 states" and denying motion to strike nationwide class allegations because "prior to discovery it is impossible for the Court to determine how many states' laws are implicated in this action, how many of those laws vary, and how many variances are material") (internal quotations and citations omitted).

## C. Whether Plaintiff Can Represent a Nationwide Class

The Court turns to SLS's argument that plaintiff, who worked only in Arizona, does not have standing to represent a class that brings claims under the laws of states other than Arizona. *See* Docket No. 49 at 6-7. The Tenth Circuit has not addressed whether it is proper to characterize challenges to a named plaintiff's ability to represent a nationwide class – where plaintiff brings state law claims for states to which plaintiff allegedly has no connection – as an issue of Article III standing to be addressed before class certification or a Rule 23 inquiry to be addressed at class certification. While district courts disagree on how to treat the issue, circuit courts have held that a plaintiff's ability to represent a nationwide class implicates Rule 23 and not Article III. *See In re Zantac (Ranitidine) Prods. Liab. Litigation,* 2022 WL 16729170, at *6 (11th Cir. Nov. 7, 2022) ("all circuits which have addressed whether a plaintiff can represent unnamed

12

class members whose claims fall under different states' laws have concluded that it is a question that concerns Rule 12(b)(6) or Rule 23 – not Article III"); *see, e.g.*, *Mayor of Baltimore v. Actelion Pharms. Ltd.*, 995 F.3d 123, 134 (4th Cir. 2021) (holding that nationwide class claims, arising under the laws of states other than where the named plaintiff was injured, "need not be stricken or disregarded" because "they may be considered in determining whether the plaintiffs' claims raise 'questions of law or fact common to the class' and whether these are 'typical of the claims or defenses of the class,' and also whether the common questions 'predominate'") (quoting Fed. R. Civ. P. 23(a), (b)(3)); *Langan*, 897 F.3d at 93 ("as long as the named plaintiffs have standing to sue the named defendants, any concern about whether it is proper for a class to include out-of-state, nonparty class members with claims subject to different state laws is a question of predominance under Rule 23(b)(3), not a question of 'adjudicatory competence' under Article III") (quoting *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 536 (7th Cir. 2011)) (internal citation omitted).

The Court agrees with the holdings of the circuit courts that have held that SLS's argument is one that should be addressed at the Rule 23 class certification stage. The Court finds that SLS's reliance on *Beltran v. InterExchange, Inc.*, No. 14-cv-03074-CMA-CBS, 2018 WL 1948687, at *6 (D. Colo. Feb. 2, 2018), to be unpersuasive. *See* Docket No. 53 at 7. In *Beltran*, the court found that "named plaintiffs lack standing to bring claims under the laws of states where the named plaintiffs have not worked or resided." 2018 WL 1948687, at *6. *Beltran* relied, in part, on an Eleventh Circuit opinion and Eleventh Circuit court order that predated the Eleventh Circuit's decision in *In re Zantac*, 2022 WL 16729170, at *4. *See id.* (citing *Griffin v. Dugger*, 823 F.2d 1476,

13

1483 (11th Cir. 1987), and *In re Checking Account Overdraft Litigation*, 694 F. Supp. 2d 1302, 1325 (S.D. Fla. 2010)). In *In re Zantac,* the Eleventh Circuit agreed with the plaintiff that the plaintiff's ability to raise claims on behalf of putative members, which arose under the laws of states for which there was no named plaintiff, "is one of representative capacity under Federal Rule of Civil Procedure 23 – not one of constitutional significance under Article III." 2022 WL 16729170, at *4. The Court finds SLS's contention – that plaintiff cannot represent a class that asserts claims under the laws of states other than Arizona – implicates a choice-of-law analysis that is best reserved for the class certification stage. *See id.* (holding that, where plaintiff did "not identify any particular jurisdiction as the source of law underlying its [state common law] claims," the "lack of specificity on this choice-of-law question may present a merits problem" but was "unconvinced that it constitutes an Article III standing problem").

Accordingly, the Court will deny SLS's motion to strike plaintiff's class action allegations that seek certification of the Nationwide Class and Arizona Class under Rule 23(b)(3).

### D.  Rule 23(b)(2) Class Certification

The Court turns to SLS's argument that plaintiff cannot certify the Nationwide Class and Arizona under Rule 23(b)(2) because plaintiff seeks insufficient declaratory relief and primarily seeks monetary damages. *See* Docket No. 49 at 13-14. To qualify for certification under Rule 23(b)(2), plaintiffs must show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) certification imposes two

14

independent but related requirements: defendant's actions or inaction must be based on grounds generally applicable to all class members, and the injunctive relief must be appropriate for the class as a whole. *Shook v. Bd. of Cnty. Comm'rs of the Cnty. of El Paso*, 543 F.3d 597, 604 (10th Cir. 2008). Rule 23(b)(2) requires that a single injunction provides relief to each member of the class. *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011).

> Plaintiff seeks the following declaratory relief:
>
> Declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;
>
> Declaring Defendant's violations of the FLSA were willful;
>
> Declaring Defendant violated the Arizona Wage Act, A.R.S. §§ 23-350, *et seq.* and that its violations were willful;
>
> Declaring Defendant breached its contracts with Plaintiff and the Rule 23 Nationwide Class by failing to pay Plaintiff and the Rule 23 Nationwide Class for each hour they worked at a pre-established (contractual) hourly rate;
>
> Declaring Defendant was unjustly enriched through its failure to pay Plaintiff and the Rule 23 Nationwide Class for the off-the-clock work and regular rate violations discussed herein;

Docket No. 1 at 31.

As SLS notes, declaratory relief that merely requests that the defendant's conduct be declared unlawful is not proper under Fed. R. Civ. P. 65(d). *See Keyes v. Sch. Dist. No. 1, Denver, Colo.*, 895 F.2d 659, 668 (10th Cir. 1990) ("generally, injunctions simply requiring the defendant to obey the law are too vague"); *Atwell v. Gabow*, 248 F.R.D. 588, 596 (D. Colo. 2008), *aff'd*, 311 F. App'x 122 (10th Cir. 2009) (unpublished) (finding that plaintiffs' "requests for declaratory and injunctive relief" that sought "an order declaring Defendants' actions 'unlawful'; prohibiting Defendants' from

15

'violating' federal antidiscrimination laws and from engaging in 'unlawful' or discriminatory practices; mandating the establishment of a 'monitoring' system ensure Defendants 'comply' with these orders" was relief that "could not support certification under 23(b)(2)") (citation omitted).  Because plaintiff's request for declaratory relief merely requests a declaration that defendant violated the law, it cannot support plaintiff's proposed Rule 23(b)(2) class.  Plaintiff primarily seeks monetary damages, specifically, the "full amount of damages and liquidated damages available by law," Docket No. 1 at 31-32, which cannot support a Rule 23(b)(2) class.  See Monreal v. Potter, 367 F.3d 1224, 1236 (10th Cir. 2004) (finding that plaintiffs "simply have not articulated a policy – besides generalized non-compliance with Title VII – that could be the subject of injunctive or declaratory relief" and that the court could not certify a class under Rule 23(b)(2)).

Plaintiff argues that SLS's "suggestion regarding class certification under Rule 23(b)(2) is entirely premature and should be left for discussion at [] the class certification stage."  Docket No. 52 at 13.  As discussed previously, a motion to strike class allegations is proper where the defendant shows that it is "*impossible* to certify the classes alleged by the plaintiffs regardless of the facts the plaintiffs may be able to prove."  Francis, 2010 WL 3733023, at *1 (citation omitted).  Because plaintiff does not seek relief that can support a Rule 23(b)(2) class, the Court finds that it is impossible to certify a Rule 23(b)(2) class.  The Court will grant SLS's motion to strike plaintiff's class action allegations that seek certification under Rule 23(b)(2).  See Ramsay, 2020 WL 4557545, at *26 (granting motion to strike class allegations in support of Rule 23(b)(2) class because "the claims for injunctive relief should be dismissed"); Izzo v. Procter &

*Gamble Co.,* 2024 WL 3970856, at *5 (D.S.C. Mar. 22, 2024) (granting defendant's motion to strike class allegations in support of a Rule 23(b)(2) class because plaintiff's "[c]laims for individualized monetary damages 'belong in Rule 23(b)(3)'") (quoting *Dukes*, 564 U.S. at 362).

### III. CONCLUSION

Therefore, it is

**ORDERED** that Defendant's Motion to Strike Class Allegations and Deny Class Certification [Docket No. 49] is **GRANTED in part and DENIED in part**.

DATED September 10, 2025

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge