IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 24-cv-01087-PAB-SBP

TYZHIMA BUTLER, individually and on behalf of all others similarly situated,

      Plaintiff,

v.

SPECIALIZED LOAN SERVICING LLC,

      Defendant.

---

## ORDER

---

      This matter comes before the Court on Plaintiff's Pre-Discovery Motion and Memorandum of Law for Conditional Collective Certification and Court-Authorized Notice to Potential Opt-In Plaintiffs [Docket No. 33]. Defendant Specialized Loan Servicing LLC ("SLS") filed a response. Docket No. 43. Plaintiff Tyzhima Butler[1] filed a reply. Docket No. 53. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I.   BACKGROUND

      Plaintiff brings this action on behalf of herself and on behalf of the "FLSA Collective Class," comprised of "[a]ll current and former hourly call center agents who worked for Defendant at any time during the past three years" (collectively, "Agents"). Docket No. 1 at 17, ¶ 99. On October 18, 2024, Alyssa E. Tweed opted-in to the collective. Docket No. 30-1 at 2. On April 7, 2025, Christine Lok opted-in to the

---

[1] Although plaintiff's gender is not entirely clear because plaintiff is referred to as both male and female, the Court will refer to plaintiff as female for reasons discussed previously. *See* Docket No. 57 at 1, n.1.

complaint, and Robert Nigo Jr. opted-in to the collective on April 10, 2025.  Docket No. 54-1 at 2; Docket No. 55-1 at 2.

Plaintiff also purports to represent "[a]ll current and former hourly call center agents who worked for Defendant at any time in the State of Arizona during the applicable statutory period," pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) (the "Rule 23 Arizona Class").  Docket No. 1 at 20, ¶ 115.  In addition, she purports to represent a "Rule 23 Nationwide Class" comprised of "[a]ll current and former hourly call center agents who worked for Defendant at any time during the applicable statutory period." *Id*. at 22, ¶ 124.

SLS is a "leading international third-party mortgage service provider."  *Id*. at 5, ¶ 25.  SLS is organized under Delaware law, has its principal place of business in Colorado, and has a registered agent in Massachusetts.  *Id*. at 5-6, ¶¶ 26-27.  SLS employs hundreds of Agents who work remotely in their homes to "field[] inbound calls and perform[] a wide range of support services to those callers" and to "provid[e] customer, sales, and mortgage information."  *Id*. at 6–7, ¶¶ 30, 35.  SLS compensates Agents on an hourly basis and classifies them as "non-exempt" employees under the Fair Labor Standards Act (the "FLSA").  *Id*. at 6, ¶ 32.  SLS requires Agents to work a minimum of eight hours per day, with an unpaid thirty-minute meal period, five days per week, for a minimum of forty hours per week.  *Id*. at 6–7, ¶ 34.  However, during some weeks, Agents work less than forty hours per week.  *Id*.

SLS requires that Agents be "phone-ready" the moment their scheduled shift begins.  *Id*. at 7, ¶ 37.  This means that, before Agents' scheduled shift begins, Agents must "load[] all of their essential work-related computer programs and applications . . .

2

so they can be prepared to take calls the moment their shift begins." *Id*. This process

can take fifteen to twenty minutes. *Id.* at 10, ¶ 53. If Agents fail to be "phone-ready,"

SLS can subject them to "poor performance evaluations, warnings, discipline, and

possibly termination." *Id*. at 2, ¶ 5. SLS instructs Agents to not "clock in" for their shifts

until they are "phone-ready" or until they are nearly "phone-ready." *Id*. at 8, ¶ 39. SLS

requires that Agents follow the same procedure when they are clocking in and out of

their lunch breaks. *Id*., ¶ 40. As a result, Agents return from their thirty-minute meal

period approximately three to five minutes early to "log back in to Defendant's programs

and software prior to resuming their shifts." *Id*. at 11, ¶ 64.

Due to Agents performing "pre- and mid-shift work off-the-clock," SLS's

timekeeping systems do not accurately represent the time that Agents worked. *Id*. at 8,

¶ 44. SLS fails to pay Agents for their "off-the-clock" work due to Agents being unpaid

for the time that they spend "in connection with the pre- and mid-shift boot-up, login, and

log-out processes." *Id*. at 8–9, ¶ 45. Therefore, "[p]laintiff and similarly situated Agents

regularly worked overtime and non-overtime hours for which they were not paid." *Id*. at

9, ¶ 46. When Agents do not work over forty hours in a week, Agents are deprived of

"straight-time wages." *Id*., ¶ 47.

SLS's payment structure includes a "base rate of pay" as well as "various routine

and non-discretionary bonuses." *Id*. at 14, ¶ 83. Non-discretionary bonuses include

"attendance bonuses, quality assurance bonuses, and other incentive-based bonus

payments." *Id*. SLS does not include the non-discretionary bonuses in Agents'

"regular rate of pay and resulting overtime rate premium." *Id*. at 15, ¶ 85. As a result,

SLS "did not pay the proper overtime rate under the FLSA." *Id*.

Plaintiff brings claims under (1) the FLSA, 29 U.S.C. § 201, et seq., (2) the

Arizona Wage Act (the "AWA"), Ariz. Rev. Stat. §§ 23-350, et seq., on behalf of the

Arizona Class [2]; (3) state common law breach of contract regarding the Nationwide

Class; and (4) common law unjust enrichment, pled in the alternative as to claim three,

on behalf of the Nationwide Class. *Id*. at 24–30, ¶¶ 133–179.

## II.   LEGAL STANDARD

### A. <u>Conditional Certification</u>

Title 29 U.S.C. § 216(b) of the FLSA, which provides in pertinent part:

> Any employer who violates the provisions of . . . section 207 of this title shall be
> liable to the employee or employees affected in the amount of . . . their unpaid
> overtime compensation, . . . and in an additional equal amount as liquidated
> damages . . . An action to recover the liability prescribed in [section 207] may be
> maintained against any employer . . . in any Federal . . . court of competent
> jurisdiction by any one or more employees *for and in behalf of herself or
> themselves and other employees similarly situated*.

29 U.S.C. § 216(b) (emphasis added).  There is a two-step approach for determining

whether plaintiffs are "similarly situated" for purposes of FLSA collective action

certification.  *Thiessen v. GE Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001).[1]  A

court's initial certification comes at the notice stage, where courts determine whether

---

[2] The complaint states that claim two is brought on behalf of the "Rule 23
Colorado Class;" however, the allegations of claim two only reference the "Arizona
Class."  Docket No. 1 at 27, ¶¶ 151–161.  Moreover, the remainder of the complaint
does not reference the "Rule 23 Colorado Class."  *See generally* Docket No. 1.
Therefore, the Court assumes that claim two is being brought on behalf of the Arizona
Class.

[1] *Thiessen* involved a collective action under the Age Discrimination in
Employment Act ("ADEA"), 29 U.S.C. § 621 et seq.  Because the ADEA adopts the
collective action mechanism set forth in FLSA § 216(b), courts in the Tenth Circuit apply
*Thiessen* to FLSA collective actions.  *See Kaiser v. At The Beach, Inc.*, 2010 WL
5114729, at *4 n.9 (N.D. Okla. Dec. 9, 2010); *see also Brown v. Money Tree Mortg.,
Inc.*, 222 F.R.D. 676, 679 (D. Kan. 2004).

plaintiffs are similarly situated for purposes of sending notice to putative class members.
*Id.* at 1102.  Plaintiff is required to provide "nothing more than substantial allegations
that the putative class members were together the victims of a single decision, policy, or
plan." *Id.*; *see also Stransky v. HealthONE of Denver, Inc.*, No. 11-cv-02888-WJM-
MJW, 2012 WL 6548108, at *4 (D. Colo. Dec. 14, 2012).  This is a "lenient" standard,
*Baldozier v. Am. Family Mut. Ins. Co.*, 375 F. Supp. 2d 1089, 1092 (D. Colo. 2005),
"which typically results in conditional certification of a representative class."  *Renfro v.
Spartan Computer Servs., Inc.*, 243 F.R.D. 431, 432 (D. Kan. 2007).  The second stage,
which comes at the conclusion of discovery, applies a stricter standard of "similarly
situated," including application of at least four factors to determine whether the case can
proceed as a collective action.  *Thiessen*, 267 F.3d at 1102-03.

### B. <u>Notice to Conditional Class</u>

Once the Court concludes that conditional certification of an FLSA collective
action is appropriate, the Court may authorize plaintiff to disseminate a proper notice
and opt-in consent form to putative class members.  *Hoffman-LaRoche, Inc. v. Sperling*,
493 U.S. 165, 169-70 (1989); *see also* 29 U.S.C. § 216(b) ("No employee shall be a
party plaintiff to any such action unless [she] gives [her] consent in writing to become
such a party and such consent is filed in the court in which such action is brought.").
The Court has broad discretion regarding the details of the notice sent to potential opt-in
plaintiffs.  *Hoffman-LaRoche*, 493 U.S. at 171.  "The overarching policies of the FLSA's
collective suit provisions require that the proposed notice provide accurate and timely
notice concerning the pendency of the collective action, so that [potential plaintiffs] can
make informed decisions about whether to participate."  *Whitehorn v. Wolfgang's*

*Steakhouse, Inc.*, 767 F. Supp. 2d 445, 450 (S.D.N.Y. 2011) (internal citations and

quotations omitted).

## III.    ANALYSIS

### A. <u>Conditional Certification</u>

Plaintiff moves to conditionally certify the following collective:

> All current and former hourly call center agents who worked for Defendant at any
> time during the last three years.

Docket No. 33 at 2.  In support of her motion, plaintiff attaches her declaration, the

declaration of opt-in plaintiff Alyssa Tweed, opt-in plaintiff Christine Lok's earning

statements and offer of employment, plaintiff's earning statement, and job descriptions

for the Customer Service Representative I, Client Success Representative, Document

Verification Specialist, Recovery Collections Specialist, and Transaction Processor job

positions. [3]  Docket Nos. 33-4-33-7, 56-2–56-4.

The Court first addresses SLS's contention that the Court cannot rely on plaintiff

and Ms. Tweed's declarations because they do not have personal knowledge of the

"widespread experiences" of Agents that would allow the Court to conclude who is

---

[3] SLS contends that the "five job descriptions attached to the Motion have no
utility in identifying anyone similarly situated to Plaintiff" because they are "Newrez job
descriptions."  Docket No. 43 at 6 (citing Docket No. 33-6).  SLS argues that Newrez,
LLC ("Newrez") is a "completely different legal entity with no connection to SLS other
than it purchased SLS's assets."  *Id.*  SLS states in its motion to dismiss that plaintiff
incorrectly identifies "Specialized Loan Servicing" as the defendant, when the correct
defendant is "Newrez LLC f/k/a Specialized Loan Servicing LLC."  Docket No. 19 at 1.
SLS attaches the declaration of Marielle A. Moore, counsel for SLS, wherein she states
that on May 1, 2024, Rithm Capital Corp. acquired SLS, and SLS merged with Newrez.
Docket No. 43-2 at 1, ¶¶ 1-3.  SLS, however, does not deny that it is properly before the
Court.  SLS's argument that plaintiff cannot rely on Newrez job descriptions in showing
that members of the collective are similarly situated is an argument that should be
addressed at the second step.

similarly situated on a nationwide basis.  Docket No. 43 at 8.  In her declaration, plaintiff
states that she "worked remotely" for SLS as an "hourly Customer Service Agent" from
her home in Tempe, Arizona.  Docket No. 33-4 at 1, ¶ 1.  Due to her training and
experience, she knows that SLS employs "hourly, non-exempt call center agents under
various titles," including "Customer Service Representative" and "Default Support
Representative," who "work remotely from their homes providing customer, sales, and
mortgage information support to Defendant's customers throughout the United States."
*Id.* at 1-2, ¶ 3.  Referring to call center "Agents," plaintiff states that Agents were trained
to "follow a specific protocol to start up and log into the company's computer network"
before beginning their work.  *Id.* at 3, ¶ 8.  Plaintiff lists the tasks she had to perform
pursuant to this protocol and states that she was not "phone ready" until the tasks were
completed.  *Id.*, ¶¶ 9, 11.  This protocol took approximately 15 to 20 minutes per shift,
and she would not "clock in" until the protocol was complete.  *Id.* at 10, ¶ 32.  As a
result, plaintiff worked uncompensated for 15 to 20 minutes per shift.  *Id.* at 3, 4, ¶¶ 10,
12.  She had to return from her lunch break three to five minutes early in order to have
enough time to log back into SLS's programs and software and be ready for her shift.
*Id.* at 4-5, ¶ 18.  She was not compensated for this time.  *Id.* at 5, ¶ 19.  She states that
SLS was aware that Agents were performing this uncompensated work.  *Id.* at 4, 5,
¶¶ 15-16, 19.  She regularly worked more than 40 hours per week as an Agent.  *Id.* at 5,
¶ 20.  In addition to a base rate of pay, plaintiff states that she received, as SLS
promised through "written policies," "various routine and non-discretionary bonuses."
*Id.*, ¶ 21.  SLS "failed to incorporate these bonus payments into the regular rate that it
used to calculate [her], and other Agent's, overtime rate."  *Id.*, ¶ 23.

Plaintiff states that she knew Agents were all subjected to "similar pay practices
and policies" based on "multiple conversation" she had with "other Agents about SLS's
compensation policies, including those described above, and its failure to pay Agents
for all work performed." *Id.* at 6, ¶ 26. She states that she "reviewed the remote
customer service Agent positions for several different states posted to Defendant's
employment websites" which are "substantially similar to the job description [she]
reviewed before applying to work for Defendant." *Id.*, ¶ 27.

Ms. Tweed's declaration contains the same information as plaintiff's declaration,
except she indicates that she was employed as an "hourly FHA foreclosure – Default
Support Representative" and worked remotely from her home in Denver, Colorado.
Docket No. 33-5 at 1, ¶ 1. Ms. Tweed states that, like plaintiff, she was an "hourly, non-
exempt call center agent[]" and had the same job duties as plaintiff and other Agents.
*Id.*, at 1-2, 3-4, ¶¶ 3, 7.

The Court finds that the allegations in the complaint, coupled with plaintiff and
Ms. Tweed's declarations, constitute "substantial allegations that the putative class
members were together the victims of a single decision, policy, or plan." *See Thiessen*,
267 F.3d at 1102. It is sufficient, at the notice stage, for the Court to accept that plaintiff
and Ms. Tweed have personal knowledge that all call center agents, or Agents,
performed similar work and were subjected to the same allegedly unlawful polices. *See
Newsome v. QES Pressure Control, LLC*, 2020 WL 5745831, at *3 (W.D. Tex. July 10,
2020) (finding that defendant's argument "that Plaintiff lacks personal knowledge of the
job duties of potential class members is unavailing" because, "[a]t the conditional
certification stage, it is reasonable to assume that an employee would have learned

what other employees in his position did during the normal course of their employment,
'such as during discussions with other employees, visiting other [locations], reviewing
emails from co-workers or reviewing material distributed by [d]efendant'") (quoting
*Reyes v. AT&T Mobility Servs. LLC*, 759 F. Supp. 2d 1328, 1334 (S.D. Fla. 2010)).  It is
further sufficient to accept the complaint's allegations that Agents are similarly situated
because they are (1) paid on an hourly basis; (2) classified as non-exempt employees;
(3) use the same timekeeping system; (4) use the same computer programs; (5) subject
to the same timekeeping and attendance polices that resulted in not being paid overtime
compensation; and (6) have the primary job duty of providing assistance to SLS's
customers, which included "fielding inbound calls and performing a wide range of
support services to those callers with questions."  Docket No. 1 at 1-2, 7 ¶¶ 3, 35; *see
Daugherty v. Encana Oil & Gas (USA), Inc*., 838 F. Supp. 2d 1127, 1133 (D. Colo.
2011) (finding that the complaint's allegations, which were supported by the affidavits
from two employees, "are sufficient under the lenient standard of the notice step to
warrant the conditional certification of a class or 'collective' action" and that the
employee was "qualified to indicate, at least for present purposes, that there were
others who did similar work for [defendant] and who, to [her] knowledge, did not
receive[] overtime compensation for hours worked in excess of 40 hours per week,"
particularly where employee "identified one such person" who shared the "belief that
[defendant] follows the same practices in at least Colorado and Texas"); *McMahon v.
Breckenridge Grand Vacations, LLC*, No. 20-cv-00754-CMA-STV, 2021 WL 4170462, at
*3 (D. Colo. Sept. 14, 2021) (rejecting defendant's argument that plaintiff did not
"sufficiently allege[] that [she] is similarly situated to any potential class member"

because "burden on the Plaintiff at this stage is low" and "[t]o meet this minimal burden, Plaintiff provided the Court with allegations of Defendant's business practices, along with supporting documents that, collectively, indicate a pattern of similar treatment by the Defendant of all its sales personnel"); *Kenney v. Helix Tcs, Inc.*, No. 17-cv-01755-CMA-KMT, 2021 WL 1634506, at *3 (D. Colo. Apr. 27, 2021) (finding that "the allegations in Plaintiff's Complaint, in combination with the Declarations of Plaintiff and [opt-in plaintiff], constitute 'substantial allegations that the putative class members were together the victims of a single decision, policy, or plan" such that conditional certification of a FLSA collective action was appropriate) (citation omitted).

The Court rejects SLS's argument that the Court cannot conditionally certify a collective on a nationwide basis due to plaintiff and Ms. Tweed only having personal knowledge as to the experiences of Agents in their own states. *See* Docket No. 43 at 9-10. Plaintiff and Ms. Tweed do not purport to speak to the experiences of Agents working at SLS's offices, but rather to the experiences of Agents who performed work remotely for SLS. There is no evidence before the Court that plaintiff and Ms. Tweed worked for a specific office. Instead, plaintiff and Ms. Tweed allege that they performed similar roles from their homes in Arizona and Colorado, respectively. Docket No. 33-4 at 1, ¶ 1; Docket No. 33-5 at 1, ¶ 1. Furthermore, there is nothing that suggests an Agent working from her home in Arizona would be subjected to different policies than an Agent working from her home in Colorado or another state. Instead, the complaint and declarations from plaintiff and Ms. Tweed allege that Agents who performed remote work had similar roles and were subjected to the same allegedly unlawful policies. *See*

Docket No. 1 at 1-2, 7 ¶¶ 3, 35; Docket No. 33-4 at 6, ¶¶ 26-27; Docket No. 33-5 at 5-6, ¶¶ 26-27.

However, to the extent that the collective includes SLS employees who did not perform remote work for SLS, the Court agrees with SLS that such employees should not be included in the collective. *See* Docket No. 43 at 6. Allegations in the complaint only address SLS employees who performed remote work. *See, e.g.*, Docket No. 1 at 6, ¶¶ 30, 31. Plaintiff and Ms. Tweed state that they worked remotely for SLS and provide no allegations concerning Agents who worked in-person. *See* Docket No. 33-4 at 1, ¶ 1; Docket No. 33-5 at 1, ¶ 1. They stated that "*remote* customer service Agent positions" they reviewed are "substantially similar to the job description [they] reviewed before applying to work for Defendant." Docket No. 33-4 at 6, ¶ 27; Docket No. 33-5 at 6, ¶ 27 (emphasis added). Accordingly, the Court will not conditionally certify a collective that includes Agents who did not perform remote work for SLS.[4]

---

[4] SLS argues that the job descriptions attached to the instant motion do not support plaintiff's position that the putative collective members are similarly situated because "the position descriptions are for in-person positions (and one hybrid)." Docket No. 43 at 6. While some of the positions are described as "on-site" or state that "this is not a remote role," *see, e.g.*, Docket No. 33-6 at 1, 12, other positions indicate that there is a potential for remote work or are hybrid. *See, e.g.*, *id.* at 2, 8, 22 (Customer Service Representative I must have "reliable transportation to work or comply with the requirements for remote work policy," the Client Success Representative is "an in-office position with flexibility primarily based in Shelton, CT," and the Transaction Processor is a "hybrid position" which "requires three days a week in the office, giving you the option to work remotely," referenced as "flexible working."). Whether the positions identified by plaintiff are performed remotely, to what extent they were performed remotely, and whether collective members are similarly situated based on these inquiries will be evaluated at the second stage of collective certification. Even if the Court did not consider the job descriptions, the Court nonetheless finds that plaintiff has provided substantial allegations that members of the collective are similarly situated based on the complaint and provided declarations.

The Court turns to SLS's argument that it is "entirely unclear" what job positions plaintiff seeks to include in the collective. *See* Docket No. 43 at 5-7. As discussed above, the Court finds that there are "substantial allegations" in the complaint that are sufficient to show that Agents, regardless of their official title, were subjected to a single policy that resulted in them not being paid overtime compensation that was owed. *See Thiessen*, 267 F.3d at 1102. The fact that "call center agent" is not an official job title at SLS does not mean that the positions identified by plaintiff are positions that are not similarly situated. SLS's argument that the "call center agents" or "Agents," as identified by plaintiff, do not encompass similarly situated individuals is an argument that should be addressed at the second stage of collective certification. *See* Docket No. 43 at 5; Docket No. 43-1 at 1, ¶ 4; *see also Mott v. TSD Telecom Serv. LLC,* No. 24-cv-00185-RMR-SBP, 2025 WL 692564, at *4 (D. Colo. Mar. 4, 2025) ("[Defendant's] arguments against certification – which relate to the different factual and employment settings, various defenses available as to individual plaintiffs, and fairness – are better suited for the stricter standard employed at the second stage of the inquiry into whether the employees are similarly situated."); *Bishop v. AT & T Corp.*, 256 F.R.D. 503, 508-09 (W.D. Pa. 2009) (After finding that plaintiff "demonstrated, under the modest factual showing standard, that [defendant's] corporate policy that workers be 'caller-ready' at the start of their scheduled tour commonly victimized call center workers," the court held that "[a]ny dissimilarities in job functions which would exclude a class member will be reevaluated at stage two when discovery is complete").

The Court turns to SLS's argument that plaintiff fails to establish an unlawful decision, policy, or plan. *See* Docket No. 43 at 11-14. Specifically, SLS argues that

there is no "substantive information" regarding how the use of non-discretionary payments resulted in Agents' regular rates being miscalculated.  *Id.* at 11.  SLS contends that plaintiff's earning statement does not show that she earned the non-discretionary payments at issue, and it is "demonstrably false" that Ms. Tweed was not eligible to earn non-discretionary payments.  *Id.* at 12.  Furthermore, SLS argues that plaintiff fails to show that there was an unlawful policy that caused Agents to work uncompensated while they prepared to be "phone ready" at the start of their shifts.  *Id*. at 13.  SLS contends that plaintiff does not "identify any plan or scheme that violates SLS's facially lawful policy."  *Id.* at 12.

"[T]he absence of [a] facially unlawful written policy, or the presence of a lawful official written policy, does not doom Plaintiff at the conditional certification stage." *Mitchell v. Villas of Holly Brook Senior Living, LLC*, 2024 WL 3342504, at *13 (C.D. Ill. July 8, 2024); *see Peterson v. Nelnet Diversified Sols., LLC*, No. 17-cv-01064-NYW, 2018 WL 3470604, at *7 n.7 (D. Colo. Apr. 25, 2018) ("to the extent Defendant argues its written policies on overtime and timekeeping comply with the FLSA, . . . 'the presence of a written policy is not evidence that the policy was enforced, and certainly does not negate the possibility of an unwritten policy or general practice to the contrary'") (quoting *Shockey v. Huhtamaki, Inc.*, 730 F. Supp. 2d 1298, 1304 (D. Kan. 2010)).  As discussed previously, the Court accepts allegations from the complaint, plaintiff's declaration, and Ms. Tweed's declaration that SLS's "schedule adherence requirements" caused Agents to perform uncompensated work before their scheduled shift began to be "phone ready," even if SLS contends that this was contrary to SLS's lawful policy.  *See* Docket No. 1 at 9, 11, ¶¶ 48-49, 64; Docket No. 33-4 at 4, ¶ 12;

Docket No. 33-5 at 3-4, ¶ 12.  Moreover, SLS asks the Court to make a factual determination that an unlawful policy did not exist, which is not proper at the notice stage.  Specifically, SLS argues that plaintiff and Ms. Tweed fail to show that they received the discretionary payments at issue, and the declarations do not "offer[] any facts to support" their allegations that "SLS attendance/schedule adherence polices pressured Agents into working off-the-clock."  Docket No. 43 at 13.  Determining whether an unlawful policy existed should not be done until the second stage of collective certification.  *See Brayman v. KeyPoint Gov't Sols., Inc.,* No. 18-cv-0550-WJM-NRN, 2018 WL 5776373, at *4 (D. Colo. Nov. 1, 2018) (when deciding whether to conditionally certify a collective, "the Court does not resolve factual disputes, decide substantive issues, or make credibility determinations"); *Pyfrom v. ContactUS, LLC*, 2022 WL 1013093, at *2 (S.D. Ohio Apr. 5, 2022) ("Whether Defendants had unlawful polices is an issue of fact.  During the notice stage, the Court generally does not, and will not here, consider the merits of the claims, resolve factual disputes, or evaluate credibility."); *Jones v. ASK Telemarketing*, *Inc.*, 2023 WL 6374179, at *4 (M.D. Ala. Sept. 29, 2023) ("a motion for conditional certification is not the appropriate vehicle for a decision on the merits").

Regarding the statutory period of the collective, SLS argues that the "period should end on May 1, 2024, when "SLS ceased to operate" and that "current employees" should be excluded from the collective.  Docket No. 43 at 14.  As discussed above, the Court rejects SLS's argument that Newrez Agents are excluded from the collective.  SLS has not argued that it is improperly before the Court or explained why Newrez should be absolved of liability for SLS's conduct after purchasing SLS's assets.

Therefore, the Court will not limit the collective to include only those Agents who worked for SLS prior to May 1, 2024.

Plaintiff also argues that "the limitations period for notice should be three years predating the filing of the Complaint." Docket No. 45 at 9. Plaintiff does not explain why tolling should apply and that the limitations period should be three years from the filing of the complaint, rather than three years from the date of this order. SLS does not address when the limitations period should begin. In civil actions, the Tenth Circuit "has applied equitable tolling when the defendant's conduct rises to the level of active deception; where a plaintiff has been lulled into inaction by a defendant, and likewise, if a plaintiff is actively misled or has in some extraordinary way been prevented from asserting his or her rights." *United States v. Clymore*, 245 F.3d 1195, 1199 (10th Cir. 2001) (internal quotation, alteration, and citation omitted). Because the Court finds no justification to toll the statute of limitations, and plaintiff points to none, the Court declines to toll the statute of limitations. The collective will include Agents who worked for SLS or Newrez beginning September 10, 2022. *See Beattie v. TTEC Healthcare Sols., Inc.*, No. 18-cv-03098-RM-NRN, 2019 WL 2866559, at *2 (D. Colo. July 3, 2019) (upon finding that the circumstances do not justify equitable tolling, ordering that notice "should be sent only to employees who worked for [defendant] in the three-year period preceding the Court's order instead of the three-year period preceding the filing of the complaint").

The Court finds that plaintiff has provided "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan,"

15

*Thiessen*, 267 F.3d at 1102, and will therefore grant plaintiff's motion for conditional certification, with the collective defined as follows:

> All current and former hourly call center agents who worked remotely for Specialized Loan Servicing LLC or Newrez LLC at any time beginning September 10, 2022.

### B. <u>Notice</u>

The Court finds that the proposed Notice contains the necessary information. Docket No. 33-2. The Notice informs putative class members of the parties involved, the parties' general allegations, information about the collective action designation, and how to opt in. *See id.* at 1-4. In addition, the Notice provides that opt-in plaintiffs must return consent forms to plaintiff's counsel within 60 days from the date of mailing of the Notice. *Id.* at 4.

As noted above, the Court will order plaintiff to modify the definition of the collective and that definition shall be used in the Notice. Specifically, when the Notice refers to Agents, it should note that it refers only to Agents who worked remotely for SLS. Therefore, the address line should read: "TO: All current and formerly hourly call center agents who worked remotely . . .," and the Description of the Lawsuit's first sentence should read "Plaintiff Tyzhima Butler ('Plaintiff') filed this action . . . on behalf of herself and all other current and former hourly call center agents who worked remotely . . . ." *See* Docket No. 33-2 at 1. The "Persons Eligible to Receive this Notice" should be "All current and former hourly customer service agents who worked remotely for Defendant at any time during the past three years (the "FLSA Collective")." *See id.* at 2. Furthermore, references to "Specialized Loan Servicing LLC" shall refer instead to

"Specialized Loan Servicing LLC or Newrez LLC" to account for Agents who started
their employment after the May 1, 2024 acquisition.

SLS argues that notice "should be limited to those impacted by the alleged FLSA
violations."  Docket No. 43 at 15.  As discussed above, the Court finds that plaintiff has
provided substantial allegations that all remote Agents or call center agents were
affected by the allegedly unlawful SLS polices that resulted in Agents being deprived of
overtime compensation.  This is sufficient to conditionally certify the collective for the
purposes of notice, even if some individuals who receive notice are ultimately found to
not be similarly situated.  *See Daugherty*, 838 F. Supp. 2d at 1133 (finding that,
"[g]enerally, where putative class members are employed in similar positions, the
allegation that defendants engaged in a pattern or practice of not paying overtime is
sufficient to allege that plaintiffs were together the victims of a single decision, policy or
plan" and noting that this finding was made "without expressing any opinion as to
whether discovery will identify any others who are similarly situated" at the second stage
of collective certification) (citation omitted).

SLS argues that three forms of notice proposed by plaintiff, U.S. mail, email, and
text, are "not necessary."  Docket No. 43 at 15.  The Court disagrees and finds that it is
permissible for the Notice to be delivered by U.S. mail, email, and text.  *See Beattie*,
2019 WL 2866559, at *2 ("The Court sees no reason why Plaintiffs should be limited to
providing notice by regular mail."); *Calvillo v. Bull Rogers, Inc.,* 267 F. Supp. 3d 1307,
1315 (D.N.M. 2017) ("Courts have recognized that notice by email and text is
reasonable in today's mobile society and that these methods of communication may
offer a more reliable means of reaching an individual even if that individual is away from

home or has moved.").  SLS also objects to the sending of a reminder email 30 days

into the notice period.  *See* Docket No. 43 at 15.  Furthermore, courts permit reminder

notices.  *See German v. Holtzman Enters., Inc.*, No. 19-cv-03540-PAB-STV, 2021 WL

1087718, at *4 (D. Colo. Mar. 22, 2021).  Plaintiff does not indicate what the content of

the initial email or the reminder email will be.  Therefore, plaintiff will be required to

submit a proposed initial email and reminder email on or before September 24, 2025.

SLS argues that "information regarding timing of filing consent to join" the

collective action is "legal advice" that "should be deleted."  Docket No. 43 at 15.  SLS

does not indicate what information regarding the filing of consent forms is legal advice,

and the Court does not find anything in the Notice that constitutes legal advice.

In the description of the lawsuit, the Notice states "Plaintiff[] also alleges that SLS

failed to compensate employees at the appropriate rate using the FLSA's required

'regular rate' calculation in connection with bonuses or premium pay."  Docket No. 33-2

at 1.  SLS argues that the reference to "premium pay" should be deleted as plaintiff's

"only 'evidence' pertains to bonus payments – no shift premiums or shift differentials."

Docket No. 43 at 15.  Because plaintiff does refer to "overtime premium" in the

complaint, *see, e.g.*, Docket No. 1 at 17, ¶ 97, the Court finds that this sentence

accurately reflects the allegations in this lawsuit.

SLS also notes that the "proposed website cannot be evaluated because no

information is provided."  Docket No. 43 at 15.  Plaintiff states that it will "retain the

services of a notice administrator who will design and supply a website for the putative

collective to access information about this lawsuit, and also participate by submitting

Consent to Join forms with the Court."  Docket No. 45 at 11.  The Court finds that it is

proper for plaintiff to use a website to communicate with potential opt-in plaintiffs.  *See
Lucyk v. Materion Brush, Inc.*, 2022 WL 3043020, at *5 (N.D. Ohio Aug. 2, 2022)
("Courts regularly approve notice procedures which permit the electronic submission of
consent forms.  Accordingly, I approve Plaintiffs' proposed notice procedure which
includes a website containing the court-approved notice and electronic submission of
consent forms.") (internal citation omitted).  Once plaintiff has established the website,
plaintiff shall notify the Court and defendant of its address.

 Furthermore, the Notice shall modify the references to "plaintiffs" to be "plaintiff" in
both the case caption and text of the Notice.  *See* Docket No. 33-2 at 1, 6.   The word
"suffering" in the Description of the Lawsuit shall be deleted.  *See id.* at 1.  The changes
identified by the Court shall also be made to the reminder notice.  *See* Docket No. 33-3.

## IV. CONCLUSION

 Therefore, it is

 **ORDERED** that Plaintiff's Pre-Discovery Motion and Memorandum of Law for
Conditional Collective Certification and Court-Authorized Notice to Potential Opt-In
Plaintiffs [Docket No. 33] is **GRANTED in part**.  It is further

 **ORDERED** that this action shall be conditionally certified as a collective action
pursuant to 20 U.S.C. § 216(b).  The collective members are defined as follows:

> All current and former hourly call center agents who worked remotely for
> Specialized Loan Servicing LLC or Newrez LLC at any time beginning
> September 10, 2022.

It is further

**ORDERED** that Tyzhima Butler is authorized to act as the representative for the collective action members and that Sommers Schwartz PC is authorized to act as counsel for the collective.  It is further

**ORDERED** that the proposed Notice [Docket No. 33-2] and proposed text message notification [Docket No. 33-3] are approved subject to plaintiff making the revisions discussed herein.  It is further ordered

**ORDERED** that within 30 days[5] of the date of this order, defendant shall provide to plaintiff's counsel the names, mailing addresses, dates of employment, job title, job location, telephone numbers, and email addresses of all putative members of the FLSA collective in an electronically readable format.  It is further

**ORDERED** that within 21 days of receiving this list from defendant, plaintiff shall send the Notice by First Class U.S. Mail, email, and text to each individual identified on the above-referenced list.  It is further

**ORDERED** that within 60 days from postmark date of the Notice, any individual to whom notice is sent shall "opt in" by returning the necessary documents to plaintiff's counsel.  A reminder email shall be sent 30 days thereafter to any individual who did not respond.  It is further

---

[5] Plaintiff requests that defendant provide the contact information for putative members within ten days of the entry of this order.  Docket No. 33 at 1.  The Court finds that allowing 30 days is more appropriate.  *See Kibler v. Kroger Companies*, No. 21-cv-00509-PAB-KMT, 2022 WL 268056, at *8 (D. Colo. Jan. 28, 2022) ("The Court agrees that 30 days is more appropriate time for defendants to compile and transmit [contact] information to plaintiff.").

**ORDERED** that plaintiff shall file a proposed email and reminder email notice on or before September 24, 2025.


DATED September 10, 2025

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge